Our next case for argument today is 2020-1711, Intel v. VLSI. Mr. Fleming, please proceed. Good morning, and may it please the court, Mark Fleming on behalf of Intel. The Shibata reference discloses a layer of solder. The solder layer is thinner than the metal electrode underneath it, and the electrode is made of nickel, or copper, or gold. VLSI's expert, Dr. Nykerk, conceded all of that. That should have been the end of it, because Claim 9 of the 672 patent requires nothing more regarding the underbump metallization, but the board committed legal error in requiring more than the claim does in two ways. Once those errors are set aside, anticipation is clear. The first error is the board thought that Shibata's solder layer 19 was too thin to be a bump that sits over an underbump metallization, even though it acknowledged that Claim 9 does not require solder to have a particular thickness. Bump is not a claim term. Nobody asked to construe it. The claim only requires a solder interconnection that is a layer, and it has no minimum thickness requirement. Well, that was one of about six rationales, and the only reference to the thinness was that that's just one more indication. The board did not say that it had to be a particular size. It just was pointing out the extreme difference, correct? Well, Your Honor, I don't think there were six rationales. I think there were only two, and one was that it thought that the solder layer was significantly thinner than prior art solder layers. If we swipe that aside, I think the only other ground on which the board distinguished Shibata was because of how Shibata used the word bump and referred to its electrode 11 as a bump electrode, and that's a separate legal error, as I'll explain. But I think those two are the only bases on which the board purported to distinguish Shibata's electrode 11 from the claimed underbump metallization. And as for the thickness requirement or the discussion of thickness in the board's opinion, I mean, the board conceded the 672 specification emphasizes the solder layer is, quote, very thin. That's in column one. It has a relatively small height. It goes down as little as five microns in the specification, and Shibata says its solder layer 19 can be up to three microns or so, so that's only two microns of difference. And the patent nowhere says that the claims would somehow exclude a three-micron layer, and VLSI has never suggested why having a five-micron layer as opposed to Shibata's three microns would make any kind of technical or practical difference. And no wonder, because if it did, they would have claimed it. And so as we read the board's opinion, the board wrote in a thickness limitation that isn't supported and is legal error, particularly under the broadest reasonable interpretation standards. With respect to the second legal error that the board made, this was wrongly requiring the prior art to use the same terminology as the patent, even though it discloses exactly the same structure. The board did not deny, and VLSI doesn't really dispute, that an underbump metallization is so-called because the metallization is generally under the solder bump. And the underbump metallization is there. It's technically there because solder sticks better to those metals than it does to the bond pads. Well, the board also found on page 23 of the appendix that Shibata's electrode 11 is under solder, just like the 672 patent's underbump metallization. So the Shibata electrode is not- Counsel, this is Judge Moore. Would you turn with me to the Shibata reference? And let's look at figure 17. Figure 17, do you agree that what is demarked 21 and 11 in figure 17 are bump electrodes? That's how Shibata refers to them, yes. And do you agree that those are not underbump metallization? No, I do not agree with that. They are underbump metallizations because in the- Wait, wait, wait, wait, time out, time out. So these are bump electrodes. How can they also be underbump metallization? What the heck are they under? Oh, okay. Well, this figure demonstrates the process of the assembly. But when the entire implementation is complete, there is a layer 19 of solder that is placed in between them. No, Counsel, no, Counsel, you're incorrect. Figure 17 is referencing the prior art. And as it explains in this patent, 11 and 21 are heated, and they become-they form the connection. There is not solder added in between figure 17 to number 11 and 21. My apologies, Your Honor. Do you need me to take you through the patent? It's in column 1, paragraph 3. I'm happy to take you through the patent if necessary. But there is no solder added to this embodiment. In the prior art, that is true. But we are relying not on- Counsel, Counsel, Counsel, stop interrupting me. Stop interrupting me when I'm interrupting you. So figure 17 is a description of the prior art. Do you understand that when a patent uses a number, it consistently uses that number identically in every figure in the patent? That number 11 in figure 17 can't be different than number 11 in figure, say, 2 or 11 or 3 or whatever. Do you understand that? Is that your understanding of how patents are written? Sure. Okay. So figure 11 and figure 21 in figure 17 are bump electrodes. They are not under bump metallization because there is no solder placed on top of them. They function fully and completely to effectuate the joinder of these two chips. Does that now sound correct? As a description of the prior art, yes, that is correct. Okay. So now when we go to figure 12, which is, I think, what you're wanting us to look at. Is that right? Yes, figure 12 and corresponding paragraph 83. So when you look at figure 12, again, we have the 11 and 21, which according to this patent are bump electrodes, which can be used to join two things together. But now we have the introduction of a thin layer of solder at 19. Am I right in understanding that? That is correct. There is a thin layer of solder 19. Okay. So I guess the problem I have with what you're arguing is that the board, and this seems to me very much a factual question, has to interpret the prior art and how that prior art would be understood by a skilled artisan. And so when they're looking at figure 12 and comparing it or understanding, you know, that figure 17 has previously been discussed by the time you get to figure 12, you know, that they're looking at 11 and 21 as bump electrodes. And I guess the question, which I see is entirely factual and not at all legal, is is there some error in their opinion by virtue of reaching the conclusion that when you add a thin layer of solder on top of an electrode bump, that it converts the electrode bump into under-bump metallization or not? The board concluded a skilled artisan would not understand the electrode bump to be converted into under-bump metallization. Instead, they understood that people would still perceive it as an electrode bump, which is distinct from the under-bump metallization. And what they concluded in this case was the under-bump metallization was the little hashed 14 barrier metal below the electrode bump, below the solder, which is then below it was an electrode bump, and below it is the barrier metal 14. And so as I understand the board's opinion, they concluded that a skilled artisan would understand 14 to be the under-bump metallization, and they wouldn't understand the electrode bump to be the under-bump metallization. And that all seems like a factual question. Am I missing something? So there's a lot in that question, Judge Moore. I want to address as much of it as I can. The first thing, and I think the question recognized this, but just to make it explicit, there's no claim in the 672 patent to how the UBM, the under-bump metallization is formed. Dr. Nykirk admits that on 1824. The only question is whether someone who makes Shabada's improvement over the prior art, which is the nickel electrode embodiment with a solder layer on top of it, will have made something that is covered by Claim 9. And the answer is they will. Well, no, counsel, the answer isn't will they have made something covered by Claim 9. The answer, the question is will a skilled artisan have understood this to be what is covered by Claim 9. I'll accept that correction, Your Honor, because I think the answer is still the same, which is a skilled artisan will look at the nickel electrode or copper or gold electrode 11 with a thin layer of solder 19 on top of it and recognize that that is structurally and technically exactly the same as what the 672 patent discloses. There is a difference in terminology. I agree. Bump electrode is used in Shabada, whereas under-bump metallization is used in the 672 patent. But this court has said repeatedly that a holding that the prior art doesn't anticipate, merely because of different technology, would be contrary to law. We cite numerous cases to that effect. Counsel, part of your problem is that the patentee did, in fact, choose the nomenclature, and under-bump metallization, by its plain language, is the metal underneath a bump, right? Yes, we don't disagree with that. So the problem is, when you look at figure 12 of the Shabada reference, it looks like, based in part on how a skilled artisan would understand the description given in this patent, that part of the electrode bump is 11, and the metal under that bump is the barrier metal between the chip surface, I guess, and the electrode bump. You wouldn't normally think of the bump itself as being part of the under-bump metallization. And, you know, I understand you would like me to disregard all that nomenclature, but that nomenclature is how a skilled artisan would read this patent. Well, again, I think in determining anticipation, the fact that a prior art reference uses terms that, you know, it's agreed in this art, are used loosely. Bump simply means a protrusion built on something else. And a layer of solder is simply that, it's a layer. And the claims, very specifically, do not recite anything more beyond that than those two factors. To say that, you know, anticipation can't be found simply because the prior art uses a different word, I don't know of any case that actually supports that. And VLSI certainly doesn't cite any. Let's recall that in the formation of... Your problem isn't that it uses a different word. Your problem is the electrode bump is understood, based on the disclosure in Figure 17, to be part of the bump, not part of the under-bump. And that's your problem. Your problem is this disclosure described at Figure 17, Number 11, being the bump. And you want me to suddenly say it's not part of the bump because a tiny little bit of solder was put on top of it. And, you know, that... Maybe, under a de novo standard, you'd have legs. But under a substantial evidence standard, I don't see that you've got any ground at all. Well, I mean, let's recall. Column 1 at line 57 of the patent says metal is provided to act as under-bump metallization and or a bump. Dr. Nykerk on 2144 says a skilled artisan may refer to a bump electrode as formed on an under-bump metallization, but it's not required that it do so. What matters is not the words, but whether someone who does what Shabbat teaches would understand that they're producing the same structure called out by the claim, regardless of what it's actually called. And what terminology is used. What matters is the technical difference. And VLSI has never pointed to any technical, practical difference whatsoever between what is shown on Figure 12 of Shabbat and described in Paragraph 83 of Shabbat on 1148 and what is recited in Claim 9, because there is no difference. It is exactly the same. It is a metal electrode with a thin layer of solder on top, and both are formed as protrusions on another surface. And so to the extent there is a need to construe what a bump is under the broadest reasonable interpretation of that word, even though it's not a claim term, I mean, then they could all qualify as bumps. But remember, the board told us how the 672 patent uses the word bump. It uses it to mean the solder layer. That's on page 821, or Appendix 21. The 672 patent repeatedly refers to the solder layer on top of the under-bump metallization as a bump. There's no requirement as to height. There's no requirement as to shape. There isn't even a statement that the under-bump metallization itself can't be initially formed as a bump on top of something else, because that's how the 672 patent forms its electrode as well. It creates it as a protrusion on top of the bond pad if it needs to do that. Otherwise, the solder won't stick to the implementation. And so the fact that Shabbat uses different terms... Counselor, you're using almost all of your rebuttal time. Would you like to save some? I would happily save some if the court would permit, but it's much more important that I address the court's questions. So I'm happy to proceed as the court wishes. I think you ought to save some time for rebuttal. So why don't we go here and hear from Mr. Loewenstein? Thank you, Your Honor. Mr. Loewenstein? Oh, I'm sorry. I thought there was going to be a tone. Good morning, Your Honors, and may it please the court. I believe Your Honors are seeing the issues exactly correctly. I'll be very brief. I believe it was Judge O'Malley who said, isn't there one of six rationales, and that's exactly right. Judge Moore is exactly correct that these are fact-bound issues. I think we can dismiss the notion that there was an implicit claim construction, as they suggest, because I'm going to quote from the final written decision. Claim nine does not require the solder interconnection to be a bump or have a specific thickness. That's on page 25 of the appendix. Now, it is one thing to say that there is an implicit construction. Such a thing could occur. It's not common, but such a thing could be present. It's quite another thing to suggest that the board made an implicit construction when it expressly said it was not making that construction and did not read those requirements into the claim. Such a notion is completely unprecedented. I thought Judge Moore's questions concerning Shabbat's original configuration and the nomenclature are exactly correct. These are fact-bound issues. Even if, under a de novo standard, someone theoretically could disagree with the board's what I think was a very reasonable decision, it doesn't really matter for purposes of review under substantial evidence. I'll just make a couple additional points that I'm fairly certain Your Honors are aware of, but I think just to illustrate further why the board found very— Counsel, this is Judge O'Malley. I have a question. Should we be concerned about the function of the structure regardless of what it's called? Well, no, because— Well, let me clarify. So I think if you look at Shabbat's original configuration, the function of the bump electorate is to be a flip-chip bump. That's what Judge Moore was alluding to in connection with Figure 17, and so that's the function of the bump electorate. And so the only thing that Shabbat does is say, well, if you're using nickel or gold, those metals have a very high melting point, and so why don't we just put a little thin dollop of solder on it just to facilitate bonding so you don't damage the chip. So I think that the function is to be a flip-chip bump, and so to the extent that it's relevant, it only further supports our position. And I think you can see that in the Yamada reference, where there's an under-bump metallization over a bump electrode, and above that there's a solder layer, but that doesn't convert the bump electrode into a part of the UVM, which Yamada says is distinct. And again, they make this argument that these are separate layers of the bump electrode. It's part of one of the layers of the UVM, but that's not correct. The board found that the bump electrode is clearly a distinct structure. So I hope I answered your question, Judge O'Malley, but I think to the extent that the function is relevant, it only supports our position. And so why did the board find that the bare metal layer is UVM? Well, Dr. Brodman, Intel's expert, says UVM typically has three layers, gold, copper, and chromium. Those are the exact same three layers that are present in bare metal layer 14. It is a prototypical UVM, and it looks like a prototypical UVM. If you look in our papers, we compared the shape of the UVM in Shibata to other UVMs in the record, and they all kind of look like this sort of Cheshire Grin, for lack of a better term. It looks exactly like a typical UVM, and it has a bump on top of it. And the bump electrode, just to reiterate, both experts agree that a bump electrode is used to refer to a flip-chip bump, and Dr. Nykerk, it's no wonder they agreed, because Dr. Nykerk cited six different references that use bump electrode precisely that way, and he also cited nine different references that uses barrier metal layer to be synonymous with UVM. And so I think Judge Moore is precisely correct that this is a fact-bound question, and quite frankly, all of the facts are on our side. And so what I would like to do with the rest of my time is respond to any questions Your Honors may have, and otherwise I'm prepared to rest. Okay. If there's nothing further, then we should hear from Mr. Fleming. We'll restore two minutes of your rebuttal time, Mr. Fleming. Thank you, Your Honor. I have only three points I'd like to focus on. To Judge O'Malley's question, the function is, of course, important, because the issue in an anticipation analysis is not the terminology that is used in the prior art, but as this court said in In Re Clarke, which we cite, the question is whether there's any difference that resides beyond the language used to describe the structure, rather than in the structure itself, and that's what matters. It's what structure a skilled artisan would see as disclosed in Shabbat. And here, it's not really helpful to talk about a flip chip bump because the patent doesn't use that phrase. Shabbat's electrode 11 functions exactly like the underbump metallization claimed in the patent. It's thicker than the solder that is on top of it. It has a higher melting point because it's made of nickel, and the solder joins it to another metallization, the second metallization. That is exactly what the underbump metallization does in the 672 patent. The only difference that Mr. Lowenstein or the board identified was that it was referred to as something different, a bump electrode. The second point. This is Judge Moore. Aren't you also arguing that 14, the barrier layer, is part of the underbump metallization in Shabbat? Yes, that's correct. So your argument is that the electrode bump and the barrier metal 14 constitute the underbump metallization in Shabbat. Is that right? Yes, that's correct. And it's uncontroversial that an underbump metallization can consist of multiple layers. The board recognizes that on page 23, and Dr. Nykirk admitted it both in his declaration and at his deposition. There's nothing in the claims that says that they exclude an underbump metallization made of multiple layers, and there's likewise nothing that says it can be a barrier metal layer and only that. Mr. Lowenstein, going back to a point of rebuttal, tried to compare bump electrode 11 in Shabbat to what he called a flip chip bump. I would say by a flip chip bump, he means a bump of solder, which is how VLSI uses it. The electrode doesn't qualify. It's made of nickel. It has a melting point over 2600 Fahrenheit. It's not solder. The solder is the gold tin layer 19 that sits on top of the metallization. The final point, if I may, about the implicit construction, Mr. Lowenstein read from page 8.5, but he neglected to read the word that precedes the language he read, which is although. And it is true that the board recognized that although claim 9 doesn't require a specific thickness, it then goes on to say it agreed with VLSI's argument that the contrast between, and this is contrast in thickness because it's the only contrast mentioned, is that Shabbat's layer 19 was somehow too thin because it went up to 3 microns, whereas the patent specification only went down to 5, but there's nothing in the patent or in the board's decision suggesting that that distinction has any meaningful patentable weight. That was an improper implicit claim construction, just as in the Fisco versus PQ case and in the Corning versus Fastell cases that we cite. So for those reasons, we respectfully submit that the court should reverse and remand for further proceedings due to the board's legal errors. If the court has any further questions, I'd be happy to answer them. I thank both counsel for their argument. The case is taken under submission. The honorable court is adjourned until tomorrow morning at 10 a.m.